## THE STATE BANK *vs.* SEAWELL.

1. The absence of a party from the State cannot be proved by general reputation.

2. The payee of a bill is a competent witness for the drawer, in a suit against him by the endorsee, to impeach its validity.

3. The provision in the statute of limitations (Clay's Dig. 327, § 84,) which entitles the creditor to bring suit after the *return* of an absent debtor, &c., applies not only to a resident debtor who has temporarily absented himself, but to a non-resident who has come into the State for the first time after the cause of action accrued; and such non-resident, if he has appeared openly, not concealing himself from, nor evading the creditor, may rely upon the time he has actually been in any part of the State, although he be travelling, and although the creditor has no actual notice of his presence.

4. Proof by the plaintiff that the defendant was a non-resident at the time the contract was made, or the cause of action accrued, raises the presumption of continued absence from the State, and throws upon the defendant the burthen of showing when it ceased, and that he has actually been within the State a sufficient length of time to create a bar under the statute.

ERROR to the Circuit Court of Perry. Tried before the Hon. John D. Phelan.

THIS was an action by the plaintiff against the defendant in error as the drawer of a bill of exchange, dated the 7th August 1840, at six months after date. The suit was commenced on the 25th day of April 1848, and the cause was tried on issues formed on a special plea of *non est factum* and the plea of the statute of limitations of six years. The remaining facts of the case will be sufficiently understood from the opinion delivered by the court.

HUGH DAVIS, for the plaintiff in error.

GARROTT, for the defendant.

PARSONS, J.—1. The plaintiff offered to prove on the trial by a witness that, according to general reputation in the neighborhood of the defendant's plantation, he was out of this State from the 12th day of April to the 17th day of September 1842, but the court rejected the evidence. In this, we think, there was no error. His absence might have been proved by positive or circumstantial evidence; it was a particular fact upon which the rights of the parties were to depend more or less, and

it could not be proved by reputation or hearsay evidence. No case, I believe, has gone so far.

2. The payee of the bill, who was released by the defendant, was admitted as a witness for him, and the plaintiff excepted to that also, and now contends that he was incompetent as a witness to impeach the validity of negotiable paper to which he was a party, on the ground of policy, and also because the defendant by his plea had denied the making of the bill. The opinions of this court, 1 Ala. 133, and 8 ib. 138, and the cases there cited, as well as others, are authorities in favor of the competency of the witness upon the first ground. It is not perceived that the witness had any actual interest on the side of the defendant, especially as he was released, which distinguishes this case from Herrick v. Whitney, 15 Johns. 240, and Shaver v. Ehle, 16 ib. 201. We think the witness was competent.

3. The Circuit Court held, in substance, that the defendant was entitled to the benefit of all the time that he was in this State, after the maturity of the bill and before the suit was brought, including the time he was within this State on his journeys to and from his plantation in Perry county. It appears by the evidence that the defendant resided in North Carolina at and before the time of the date of the bill and continued to reside there until the fall of 1843, when he moved to this State. But it also appears that for some years before the date of the bill until his removal to this State in the fall of 1843, he visited his plantation annually, and remained there from the fall till the spring on each of his visits, and that since his removal he has remained in this State. There was no evidence that he came to, remained in, or left this State clandestinely at any time, or that he ever evaded the plaintiff, but it does not appear that the plaintiff had notice of his presence in this State.

The statute is that if the debtor be out of this State at the time of the cause of action accruing, or at any time during which a suit might be sustained on such cause of action, then the person entitled to the action may bring the same against the debtor after his return into this State; and the time of the debtor's absence shall not be taken as part of the time limited by the act, (Clay's Dig. 327, § 84,) which in cases like this is six years. Although the act uses the word return, which, indeed, can have a literal application in this case, yet almost all courts have held

41

acts, similar in this respect, to extend to persons who never re-sided in the State, but came into it, after the cause of action accrued, for the first time.—16 Pick. 363; 14 Mass. 203; 11 Wheat. 361; 3 Johns. 261; 5 Howard's (Miss.) R. 266.

The savings in the statutes of limitations of several, if not all of the States, in respect of debtors returning into the State, are in other respects, not identical with ours. The saving or exception in Massachusetts applies where the debtor was absent, without leaving property in the State; and there it seems to be the doctrine that the creditor either must have known of his return, so as to have had an opportunity to arrest him, or that his return was so public as to amount to constructive notice or knowledge, and to raise the presumption that if the creditor had used ordinary diligence the debtor might have been arrested.—Little v. Blount, 16 Pick. 359. And there are intimations, if not decisions, to the same effect elsewhere.—Fowler v. Hunt, 10 Johns. 475. But I think we cannot hold, in this State, any thing more under the saving clause of our act, than that the debtor must appear openly in this State, not concealing himself from or evading the creditor, in order to have a right to defend upon the time he was actually in this State. His presence in the State is all the statute requires, and that the time of his absence from the State is not to be taken as part of the time limited by the act. Without engrafting provisions on the exception or saving of the act, which were, perhaps, intentionally omitted by the Legislature, we can require nothing more than an actual open presence in the State. Therefore, we think, the defendant was entitled to the benefit of all the time he was in any part of this State, over which the courts had unobstructed jurisdiction, and consequently, we think, he was entitled to the benefit of the time he was travelling in this State, from and to his plantation. The statute of limitations is regarded now as a statute of repose and should have the full effect the Legislature intended.

4. The court refused to charge, as requested by the plaintiff, that if the jury believed from the evidence, that the defendant resided and made the bill out of this State, and did not remove here till after the fall of 1843, that then the onus was on him to prove that he was in this State six years after the bill matured and before the suit was brought, and the plaintiff excepted.

Whether material or not that the bill may have been drawn beyond this State, there were some circumstances in evidence from which the jury might possibly have infered that fact. Therefore, the charge prayed was not abstract, but had reference to the evidence before the jury. The plaintiff by the nature of its replications took the onus of proof upon itself, but the onus may shift in the course of a trial several times. When the plaintiff proved the non-residence of the defendant when the bill matured or when it was drawn, that turned the presumption against the defendant, because his non-residence was *prima facie* evidence of his absence and it lay upon him to show when it ceased; or, by evidence, to repel the presumption of his absence, that arose from it. If a court is expressly requested to charge with reference to the analysis of the evidence, it ought, in most cases at least, to be done. In this case, if the jury had been told that the fact of non-residence made a *prima facie* case against the defendant, and that the burthen of answering it by evidence was upon him, the jury might have come to a different conclusion probably, than they did by looking at the evidence in a mass, without contrasting the positions of the parties or knowing upon whom the burthen lay. For refusing to give this charge there was error, we think, and for that alone the judgment is reversed and the cause remanded.