# Minniece *v.* Jeter.

*Action on Promissory Notes, by Payee against Maker.*

1. *Entries in party's memorandum book; when admissible as evidence.*—Entries in a memorandum book, purporting to show items of personal expenditure by the owner, are not competent evidence, on proof of his handwriting only, and his own statement as a witness, "I kept a memorandum book during the whole of that time, and recorded in it all my expenses."

2. *Statement of opinion or conclusion by witness.*—Under the plea of set-off, the defendant claimed a credit for the value of plaintiff's board while she resided at his house; and plaintiff insisted that her personal services during that time were worth as much as her board, if not more. A witness for de-

[Minniece v. Jeter.]

fendant was asked, on cross-examination, whether he did not know that plaintiff's stay at defendant's house "was a benefit to him and his family;" and answered, "To the best of my judgment, I must say, that I was impressed with the idea then that it was of benefit to him and his family." *Held*, the statement of a "mere conclusion, opinion, or conjecture, with no facts to support it," and therefore incompetent as evidence.

3. *Questions held leading, and calling for legal conclusion.* — *Questions* propounded to plaintiff, as witness for herself: "Were your services worth as much as your board? and if not, how much did it lack? Were your services worth more than your board? and if so, how much more?" *Held*, leading and illegal. *Question*: "Was the giving of these notes, or not, a settlement and closing of your pecuniary relations with defendant up to date?" *Held*, leading and illegal, and objectionable because calling for statements of legal conclusion

4. *Proof of foreign statute.* — A mere statement in the bill of exceptions, "The plaintiff then read in evidence the statutes of Mississippi," when the statutes referred to are not set out, and there is no agreement in reference to them, does not bring the statutes before this court.

5. *Foreign statute of limitations, as defense here.* — When a foreign statute of limitations is pleaded as a defense to an action here, as it may be under our statute (Code, § 3237), any exception in the foreign statute is also available in answer to the plea; but our statute allows the bar of the foreign statute, only when the action is founded on a contract made or act done within the foreign jurisdiction, and the plea should aver that such is the fact.

6. *Absence from State, in computation of time, effecting statutory bar.* — In the computation of the time necessary to effect a bar under the statute of limitations (Code, § 3234), the period during which the defendant has been absent from the State, is required to be deducted.

7. *Pendency of former suit; when pleadable in abatement.* — The pendency of a former suit between the parties, founded on the same cause of action, is good matter for a plea in abatement, unless the affidavit or process by which it was commenced was void.

8. *Authority of deputy-clerk.* — A deputy-clerk — that is, one duly appointed and qualified —has full power to transact all business of his principal (Code, § 676, subd. 2); and an attachment issued by him, or an affidavit administered by him, is not void for want of authority.

9. *Replication to plea in abatement, of former suit.* — When the pendency of a former suit, founded on the same cause of action, is pleaded in abatement of an attachment suit, it is good matter for a replication to the plea, that the former attachment was issued by a person who was not a regular deputy-clerk, and who had no authority to issue it.

10. *Partial payment, in avoidance of statutory bar.* — A partial payment on a claim, made before the statute of limitations has effected a bar, is an admission that the debt exists, and obliterates all past time in the computation of the statutory bar; but, to have this effect, the party making the payment must intend its application to the debt, or must know and approve such application; and where the money is sent by a third person, and nothing is said as to its application, or the purpose for which it is sent, it is a question for the jury, under the facts in proof, whether a partial payment or a gift was intended.

11. *Admission of indebtedness by letters.* — When the statute of limitations is pleaded, and the existence of any indebtedness at a particular time is also a material question, letters written at that time by the defendant to the plaintiff, containing general admissions of indebtedness, and excuses for delay in making payment, are competent evidence on the question of indebtedness *vel non*, although the admissions may not be sufficient as an acknowledgement or promise to avoid the statute of limitations.

APPEAL from the Circuit Court of Sumter.

Tried before the Hon. LUTHER R. SMITH.

This action was brought by Cynthia C. Jeter, against John

A. Minniece, and was commenced by original attachment, sued out on the 23d October, 1874. The defendant pleaded in abatement, that the plaintiff had sued out another attachment against him, on the same cause of action, on the 15th April, 1874, and that said former attachment suit was still pending when the attachment in this case was sued out; and he also moved to dismiss the suit on the same ground. The court overruled the motion to dismiss, to which, as the judgment-entry recites, the defendant excepted; and pleas in bar being filed, by consent, and by permission of the court, " without waiving said sworn plea in abatement, it was agreed that all of said pleas might be tried at once." On the trial, as appears from the bill of exceptions, the defendant offered in evidence the record of the former attachment suit, which showed that the writ of attachment therein was sued out as stated in the plea; that the defendant filed a sworn plea in abatement, alleging that the attachment was issued by one A. D. Hall (who also administered the affidavit and approved the bond), in the absence of the clerk, and without his knowledge, and without any legal authority for so doing; and that at the next ensuing term of the court, on the 30th October, 1874, which was after the commencement of the suit in this case, judgment was rendered, that the plaintiff confessed the plea, and dismissed his suit. This being all the evidence adduced in reference to the former suit, the court charged the jury as follows : "If the jury believe, from the evidence, that the plaintiff sued out an attachment against the defendant, on the same cause of action, and it was levied upon the same property, a subsequent suit between the same parties, on the same cause of action, and levied on the same property, is not subject to be abated, by plea or otherwise, although the former suit was pending and undetermined when the subsequent suit was commenced, *if* the jury believe from the evidence, as shown by the pleadings in the former suit, that said attachment was issued by the deputy-clerk : that the process being void, it stood as if there was no suit pending." To this charge the defendant excepted.

The action was founded on two promissory notes, each signed by the defendant, and payable to the plaintiff or order, with interest from date at eight per-cent,, for value received; one being for $800, dated "Memphis, January 6, 1858," and payable on the 6th January, 1859; and the other for $200, dated August 2d, 1858, and payable twelve months after date. "On these notes," as it is recited in the bill of exceptions, were the following indorsements, each signed by the defendant: "The above sum I received from Dr. Henry

W. Jeter, in Memphis, on the 6th January, of funds belonging to C. C. Jeter; and out of the amount I expended one hundred dollars, in paying travelling expenses of self, Sarah, and C. C. Jeter, to Gainesville. A portion, or all of said sum, should be allowed on settlement." "The above sum of $200 was received from C. C. Jeter, on the 2d August, 1858 ; and both the above sums are credited on a claim in favor of C. C. Jeter v. Dr. Jeter, on the dates above." "I am to pay interest annually on the within notes, or compound the interest annually if not paid." The following credits were also indorsed, the plaintiff's name being subscribed to the last : "This note is entitled to a credit, September 12th, 1865, $10.00 ; December 10th, 1863, by 104³ lbs. of pork, at ten cents per pound, $10.43 ; March 6th, 1866, cash, $8.00 ; May, 1866, by my expenses, &c., from Gainesville, Ala. to Cold Water, Miss., $48.90 ; March 8th, 1867, cash paid freight on goods to Memphis, Tenn., from Gainesville, Ala., $6.50." Received on this note, June, 1870, per hands of Mr. Hemingway, for John A. Minniece, $50."

The defendant pleaded the general issue, payment, set-off, the statute of limitations of six years, and the Mississippi statute of limitations of six years ; and issue was joined on all these pleas. On the trial, as the bill of exceptions shows, the plaintiff offered in evidence the notes on which the suit was founded, and then introduced one J. O. Hemingway as a witness, who thus testified : "Some time in June, 1870, defendant came into his store, in Gainesville, Alabama, and asked him for an envelope ; and when witness handed one to him, he inclosed a fifty-dollar bill in it, and asked witness to hand it to plaintiff, who was at the house where witness lived. There was no writing in said envelope—nothing but the bill. Witness handed the envelope, with the inclosure, to plaintiff, and told her that defendant had asked him to do so. She made no indorsement on the note in his presence. He knows who made the indorsements on the note; they were placed there by plaintiff. He knows the signature to the last indorsement : it is in the plaintiff's handwriting. Defendant did not say, when he handed the $50 to witness, that he owed plaintiff nothing, and did not direct how the $50 should be applied. Witness told plaintiff to place this as a credit on the note, and she did so." In reference to this credit of $50, the plaintiff herself, whose deposition was taken on interrogatories and cross-interrogatories, thus testified : "Mr. Hemingway handed me a sealed envelope, which I opened, and it contained a $50 note only. I asked him, where it came from ; and he replied, that Mr. Minniece sent it to me ; and I therefore gave him credit for that amount."

(15)

The defendant testified, as a witness for himself, in reference to this money, "that the indorsements on said notes were not made by him, nor by his authority, and he does not know who placed them upon said notes; that he sent $50 to plaintiff, by Mr. Hemingway, but did not authorize any one to place it as a credit on said notes; that he remarked to Mr. Hemingway (he was not certain he made the remark, but thinks he did), that he owed plaintiff nothing, and sent the money to her as a gift."

This being all the evidence adduced, in reference to this payment or credit of $50, the court charged the jury, "that if there was an indebtedness between plaintiff and defendant, and defendant sent $50 to plaintiff, in June, 1870, without any instructions, the law presumes that he intended to pay it to the debt, and the plaintiff had a right to apply it as a credit on the note; and when so applied, it would take it out of the statute of limitations." The court charged the jury, also, at the instance of the plaintiff, as follows : "If the jury believe that the defendant made a payment of $50 to plaintiff in 1870, without directing its application, then plaintiff had a right to apply the amount as a credit on the note due from him to her ; and if such payment was credited as a partial payment on said note, this would stop the running of the statute of limitations at that time, and unless they should find that more than six years had transpired from the date of this credit to the bringing of this suit, they should find this issue for the plaintiff." To each of these charges the defendant excepted.

As to the consideration of the notes, the plaintiff thus testified : "The consideration of the two notes was borrowed money. The note for $800 was made in Memphis, Tennessee; it was not the result of a settlement, but for borrowed money. The note for $200 was given in Gainesville, Alabama; the money was had from my brother, H. M. Jeter, while on a visit there." The defendant thus testified in reference to this matter : " That he was the executor of the estate of Mrs. Sarah M. Jeter, deceased ; that the money for which the $800 note was given was contributed by the devisees of the estate, his wife being one of them, to the plaintiff, for her support; that the note for $200 was given for excess in the division of the negroes of the estate ; that at the time he executed said notes, plaintiff and himself lived in Gainesville, Alabama, and Dr. H. Jeter had the money in Mississippi, where he lived, but paid it to defendant in Memphis, Tennessee, and he there executed his notes for it." The defendant further testified, "that he removed from Gainesville, Alabama, to Mississippi, in November,

1865 ; that the plaintiff removed from Gainesville to Missis-
sippi in May, 1866, and both have continued living there
ever since." The plaintiff's testimony, as to the facts of
removal and residence, was substantially the same ; and
there was no conflict in the testimony as to these matters.
The bill of exceptions states, that the " plaintiff then intro-
duced in evidence the statutes of Mississippi ; " but the
statutes are not set out, nor is there any agreement in refer-
ence to them.

This being all the evidence in reference to the defense of
the statutes of limitations, " the court thereupon charged the
jury, that if they believed, from the evidence, that the note
was payable on the 6th January, 1859, and was executed in
another State, while the plaintiff and defendant were resi-
dents of this State, and that the defendant was absent at any
time from the State ; then they must deduct the time inter-
vening between the 11th day of April, 1861, to the 20th day
of September, 1865, and also the time he was absent from
the State, although both parties were residents of the same
State ; and if they believe, after making said deduction, that
six years had not elapsed, then the statute of limitations is
no bar to the recovery." The court charged the jury, also, on
the request of the plaintiff, " that if the note was due in 1859,
and the defendant removed from the State in 1865, and has
remained out of the State since that time, then the statute of
limitations is no defense." To this charge, also, the defend-
ant excepted ; and he then requested the court to give the
following charges, which were in writing : " When the statute
of limitations of any other State has created a bar to an ac-
tion, upon a note or contract, the bar is effectual here ;
therefore, if the jury believe, from the evidence, that the bar
of the statute of limitations was complete in the State in
which defendant resided, previous to the commencement of
this suit, then they must find for the defendant, unless they
are satisfied, from the evidence, there was an unconditional
promise in writing, signed by the defendant, to pay the same,
or a partial payment made on the note." " If the jury
believed, from the evidence, that plaintiff removed to Missis-
sippi in May, 1866, and the defendant moved there in 1865 ;
and that the plaintiff could have sued in Mississippi, but ne-
glected or failed to bring a suit until six years had elapsed ;
then, the bar is complete, and the plaintiff cannot recover."
The court refused each of these charges, and the defendant
excepted to their refusal.

Under the pleas of set-off and payment, the defendant in-
troduced an account against the plaintiff, amounting, with
interest, to nearly $4,000 ; and he testified to its correctness.

[Minniece v. Jeter.]

The principal items in this account were, "board, washing, lodging, fuel, and lights," from August, 1849, to January, 1864, at $150 *per annum;* also, $300, paid for plaintiff's subscription to the Gainesville and Tuskaloosa railroad ; and $100, defendant's travelling expenses to and from Memphis, on business for plaintiff. All these items were contested, and conflicting evidence was introduced in reference to them. On the part of the plaintiff it was contended, and the evidence introduced by her tended to show, that she lived with defendant as a member of his family, assisted in the discharge of the household duties, taught his children, &c.; that her services were reasonably worth as much as her board ; and that she had paid the defendant's wife, for her board, by agreement, $60 annually. Testifying in reference to these matters, in her deposition, the plaintiff said : " I kept a memorandum book during the whole of that time, and recorded in it all my expenses ; and I am certain I paid defendant my board regularly, as above stated." The witness Hemingway produced and identified this book, describing it as a " cash book containing memoranda of expenses, which was sent to him by plaintiff before the trial, and also sent and returned to him since the trial begun ; that the handwriting of said book is plaintiff's, and it is the book of accounts alluded to in her deposition." On this evidence, the plaintiff offered the book in evidence ; to which the defendant objected " on the ground that it was illegal and irrevelant, and was nothing more than the declaration of the plaintiff, which was hearsay." The court overruled the objections, and admitted the book ; and the defendant excepted.

A part of the third direct interrogatory to plaintiff was in these words : " If you did any service while you lived with defendant, state what sort of service you did, and what was its value. . . . Was it of value to defendant and his family ? if so, to what extent ? *Were your services to defendant and his family worth as much as your board ? if not, how much did it lack ? Were your services worth more than your board ? and if so, how much more ?* " Before filing cross-interrogatories, the defendant objected to the italicized portion of this interrogatory, " because the same is illegal, and leading, and points the witness directly to the desired answer." A part of the fifth direct interrogatory to plaintiff was in these words : " Was the giving of these notes, or not, a settlement and closing of your pecuniary relations with defendant up to date." To this interrogatory the defendant objected, " because the same is leading and illegal, and because the matter sought to be proved is a legal question, which is to be solved by the court, and not by the witness." When the

[Minniece v. Jeter.]

deposition was offered in evidence on the trial, " the defendant moved the court to sustain the objections filed to said interrogatories ; but the court overruled said objections, and the defendant excepted."

The defendant took the deposition of Mrs. Sarah Roberts, who was the sister of his wife, and of the plaintiff, and examined her in reference to the plaintiff's boarding and living at his house. The third cross-interrogatory to this witness contained a question in these words : " Don't you know that her stay there was a benefit to him and his family, instead of a detriment to them ? " The witness answered : " As to whether her stay at defendant's was beneficial or detrimental to him, to the best of my judgment, I must say, I was impressed with the idea then that it was of benefit to him and his family." On the trial, the defendant moved to suppress this answer, " on the ground that it was irrelevant and immaterial, and was the conclusion of the witness ;" and he reserved an exception to the overruling of his objections.

The plaintiff offered in evidence, after proving the handwriting, several letters written by the defendant ; four of them being addressed to the plaintiff, and one to Dr. Henry M. Jeter, her brother. The defendant objected to the admission of the letters, " because they were irrelevant and illegal," and he reserved an exception to the overruling of his objection. The letter to Dr. Jeter was dated May 17th, 1857, and, after mentioning the writer's settlement of his administration on an estate which had caused him much annoyance, used this language : "Now I can see the way perfectly plain, without selling property, if I can secure the loan of what money sister Cynthia has. I will make it doubly secure to her, in any contingency, and will pay her the interest annually, or add it to the principal, if she desires it, at the end of each year, so that the interest will compound." The letters to the plaintiff were dated, respectively, September 5th, 1867, February 14th, 1868, February 24th, 1868, and June 8th, 1871. The following are extracts from them : "I am sorry that I cannot respond to your letter in a way that is satisfactory to myself, and probably less so to you. You have lost sight of the fact that I lost everything by the surrender." After stating his debts, failure of crops, &c., " I ask you, in all candor, if you see any way I can pay any money at present. Nothing would give me more pleasure, as you must know, than to be able to pay the last farthing, but I am not capable of working miracles." "As fast as I can earn the money, over and above the wants of my family, I have no further use for it than to pay my debts." " It may be possible that I can send you a little

[Minniece v. Jeter.]

money this fall or winter, if I am successful, but I do not wish to promise." "I had hoped that during the winter I would be able to scrape together a little money to send you, but in this I have been disappointed." "Can it be possible that you have determined to go to law with me? You well know that I would divide the last cent I have with you. . . You certainly could not think that I would allow other creditors to come in, to your prejudice." None of the letters made any distinct allusion to the notes now sued on, nor admitted any specific indebtedness.

The several rulings of the court on the evidence, and in the charges given and refused, to which exceptions were reserved, as above stated, are now assigned as error.

THOS. COBB, for appellant.

COCKRELL & SNEDECOR, contra. ·

STONE, J.—The judgment of the Circuit Court in this cause must be reversed, on certain points reserved in the court below to the introduction of evidence. The memorandum-book of expenses kept by Miss Jeter was improperly admitted.—*Acklen's Executor v. Hickman*, 63 Ala. 494. That part of the answer of the witness Roberts, in these words: "To the best of my judgment, I must say, that I was impressed with the idea, then, that it was of benefit to him and family," is mere conclusion, opinion, or conjecture, with no facts to support it, and should have been excluded. The two objections taken to parts of direct interrogatories three and five, propounded to plaintiff, were well taken; but they seem to have elicited no objectionable testimony.

The defendant pleaded the statute of limitations of the State of Mississippi, alleged to be six years, in bar of the recovery. The bill of exceptions does not set out the statute, and contains no statement of agreement that we may consult the statute-book. All that is said in the bill of exceptions, on this subject, is, "The plaintiff then introduced in evidence the statutes of Mississippi." For what purpose this was done, and why done by plaintiff, we can not learn. This does not bring before us the statute of Mississippi relied on.—1 Brick. Dig. 880, §§ 1096, 1099.

This question, however, has been argued, as if the statute of Mississippi was in evidence; and in as much as it will probably arise on another trial, we feel it our duty to notice the question. Our statutes on the subject have nothing to do with this question, further than to allow the defense to be made in this State. When made, its sufficiency must be

VOL. LXV

tested by the laws of the State, whose statutory bar is invoked. If there be exceptions, which prevent or intercept the running of the statute, they are the exceptions of the statute pleaded, not those enacted by our legislature. Our statute (Code of 1876, § 3237) is conceived and framed on the theory, that a debt which becomes barred by the laws of another State or country, of which such debtor is a resident, is alike barred in this State. If there be exceptions in the statute of such other State or country, which prevent the bar there, then such bar is equally ineffectual in this State. Our statute is a legislative comity, and is in no way affected by reservations of this State, which come in play when our statutes of limitation are pleaded.

When the statutory bar of another State or country is relied on, the frame of our statute (section 3237 of the Code 1876) is such as to confine its operation to contracts made or acts done in such other· State or country. The concluding clause of this section compels this construction. It follows that, unless the contract sued on was made in Mississippi, the bar of that State can not be pleaded in defense of it. The plea, to be good, should aver that fact. This statute, we think, had its origin in the hardship supposed to be inflicted by the decision in *Jones v. Jones*, 18 Ala. 248, overruling *Goodman v. Monks*, 8 Por. 84.

As the undisputed facts appear in this record, the defendant became a non-resident of Alabama in 1865, and ever afterwards remained so. The statute of limitations of Alabama is no defense in this case.—*Wright v. Preston*, 55 Ala. 570 ; *Harrison v. Heflin*, 54 Ala. 533.

The first charge given by the court can not be sustained. The pendency of a former suit between the same parties, on the same cause of action, may be pleaded in abatement of a second suit, and will abate it, unless the affidavit or process, by which the first suit is commenced, is void.—*Stevenson v. O'Hara*, 27 Ala. 363 ; Drake on Attachment, § 184 ; *Matthews v. Sands*, 29 Ala. 136. A deputy-clerk, we will presume, is one duly appointed and qualified; and such deputies have full power to transact all business of such cleik.—Code of 1876, 676, sub. 2. If the person who administered the oath, and ·issued the first attachment, was not so appointed and qualified, that was and is a subject for a replication to the plea in abatement.—See *Lowry v. Stowe*, 7 Por. 483. The second charge given is correct, so far as the Alabama statute of limitations is supposed to affect this case. It has no pertinence to the statute of Mississippi, which must be governed by its own provisions. The third charge given is substantially correct, and so is the

[Hungerford v. Moore.]

first given at the instance of plaintiff, with this qualification and explanation : Partial payment on a claim of debt, made before the statute has perfected a bar, intercepts the running of the statute, because the payment is an admission that the debt exists. Reason and the law concur in saying, the payment would not be made, if there were no admitted indebtedness. Hence, it is said, a partial payment on a debt, past due, obliterates all past time in the computation, because it is an admission by the defendant that the debt· then exists. Why pay, if there is no debt ? To come within this rule, however, the defendant must intend the payment shall be thus applied, or must know and approve such application. The plaintiff, or payee, by an unauthorized indorsement of payment on the note, can not fix or continue a liability on the promisor. It requires the act or concurrence of the promisor, to do that. If, when the payment is made, there be a debt, and if nothing be said explanatory of the act of handing over the money, this is a strong circumstance tending to show partial payment was ·intended, and would justify a jury in so finding. The question, under the evidence, was, payment on the debt, or gift. This was a question for the jury, and depended mainly on the inquiry, whether, at the time the money was delivered to the agent, Minniece was indebted to the plaintiff, and whether at that time he gave any directions, and if so, what directions, as to its purpose or application. The letters of Minniece, found in the record, were evidence on the question of indebtedness *vel non.*

The second charge given at the request of plaintiff is correct, when applied to the statute of Alabama. Charges 2 and 3 asked by defendant were rightly refused.

Reversed and remanded.