## Cary v. Simmons.

*Bill in Equity by Administrator, for Removal of Settlement.*

1. *Decedent's estate; removal of settlement into equity by administrator.*—When an administrator seeks to remove the settlement of the estate into equity, it is immaterial whether or not proceedings for a settlement have been commenced in the Probate Court: in either case, he must aver and show some special ground for equitable intervention.

2. *Same; advancements made by administrator for distributees.*—By statutory provision (Code, §§ 2150-60), an administrator may, on final settlement of his accounts in the Probate Court, be allowed a credit, as against the distributive shares of the several distributees, for moneys paid out and expended by him for their support and education during infancy ; and this statute operating on the remedy only, it will be held to apply to and include such expenditures made before its passage, which would then have been allowed in equity; consequently, such prior payments are now no ground for equitable interposition.

3. *Same; removal of incumbrances on land.*—As to lands which never belonged to the intestate, but which accrued to the distributees, as tenants in common with the administrator, from some other source, the administrator may, by paying taxes, or removing incumbrances, acquire as against the distributees a claim for reimbursement; but such claim can not be enforced or allowed on settlement of his accounts, either at law or in equity—neither in the Probate Court, nor in the Chancery Court.

4. *Same; partnership accounts; statute of limitations, as bar to suit for settlement.*—Where it appears that the administrator and his intestate had been partners in business, and the partnership was dissolved by consent, but no settlement of accounts was had ; and the intestate then removed to Georgia, and there died after the lapse of several years; the administrator might have a settlement of the partnership accounts in equity, and a decree for any balance in his favor, which would bind any personal assets in his hands, notwithstanding the bar of the statute of limitations; but, when his bill shows that he had no personal assets, and that he seeks to change the lands in the hands of the heirs, or the rents thereof, the statute of limitations is a bar to the suit.

APPEAL from the Chancery Court of Bullock.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 1st December, 1888, by Murrell R. Simmons, as the administrator of the estate

of Mrs. Helen G. Cary, deceased, who was his sister, against Charles Cary and others, children and heirs at law of said decedent, and distributees of her estate; and sought to remove the settlement of the administrator's accounts into the Chancery Court. According to the allegations of the bill, the complainant and Mrs. Cary, then a widow, formed a partnership on the 1st January, 1869, for the purpose of conducting a boarding-house at Union Springs, and carried on that business until December 30th, 1870, when the partnership was dissolved by mutual consent, because they found that they were losing money. By the terms of the partnership, as alleged, the family of each of the partners was to board at the house; but, on account of the difference in the numbers composing their families, Mrs. Cary was to pay or allow complainant $8.00 per month. On the dissolution of the partnership, Mrs. Cary removed to Georgia; and she there died on June 3d, 1873, intestate, leaving her three children, then infants, her only heirs at law and distributees of her estate. No settlement of the partnership accounts was ever had, and the complainant claimed that Mrs. Cary was indebted to him, on partnership account, in the sum of over $3,600. Letters of administration on Mrs. Cary's estate were granted to the complainant, July 30th, 1873, by the Probate Court of Bullock county, and he gave bond, and entered on the discharge of his duties. At the time of Mrs. Cary's death, she owned personal property in Bullock county of the value of $216, and a plantation in said county containing about 320 acres; but the estate was largely indebted, and she owed, among other debts, one to Ware, Murphy & Co. for $1,028.30, which was secured by mortgage on said lands. Her children, then minors, as the bill alleged, "had no source or means of support, nor any property other than their interest in their mother's estate, excepting an undivided interest in a plantation in Georgia known as the 'Ossabaw plantation,' which had been sold for taxes, and was held adversely, and was not productive of any income for the benefit for said children, neither of whom ever had a legally appointed guardian. . . . Said lands or plantation being in bad repair, and in consequence of the expenditures necessary for repairs to keep said place in a tenantable condition, the large indebtedness of said estate, the maintenance and education of her children, and in order that he might save said lands from sale under said mortgage, or for the payment of debts, complainant during said administration

incurred personal liabilities, and made advances for and on account of the support, maintenance and education of said children, and especially for said Mary H. Cary, who, after the death of her mother, lived with him; and for the reasons above set forth, and for the further purpose of saving to said children the costs and expenses which would have been incident to the appointment of a guardian for them, complainant's administration of said estate has been thus long continued. . . Some time during the year 1870, complainant and others, who were joint owners with said children of said Ossabaw tract of land, undertook to and did redeem the same from tax sale, and recover the possession thereof; and in said redemption, and the litigation that was necessary for such recovery, complainant expended for and in behalf of said children, and for the protection of their interests in said Ossabaw lands, the sum of $200; and he avers that said sum, together with other advancements made by him for and in their behalf as aforesaid, should be allowed him as charges against their respective distributive shares of said estate, on final settlement and distribution thereof."

On these allegations, the bill prayed that the settlement of his administration might be removed into the Chancery Court; that an account of the partnership transactions might be stated, and any balance found in his favor "be decreed to be allowed him as a proper charge against said estate;" and that an account might also be stated of his expenditures for the children, and the balance in his favor be declared a charge against their respective distributive shares.

The defendants demurred to the bill, specially assigning as grounds of demurrer, (1) that no facts were alleged which justified a removal of the settlement from the Probate Court; (2) that the claim for an account of the partnership transactions was a stale demand, and was barred by the statute of limitations; (3) that the debts of the estate were presumptively paid, and (4) that the complainant had an adequate remedy at law for the enforcement of any legal demands he might have. The chancellor overruled the demurrer, holding that the bill contained equity; and his decree is now assigned as error.

TOMPKINS & TROY, for the appellants, cited *Chambers v. Wright*, 52 Ala. 444; *Teague v. Corbitt*, 57 Ala. 529; *Weakley v. Gurley*, 60 Ala. 399; *Glenn v. Billingslea*, 64 Ala. 345; *Newsom v. Thornton*, 66 Ala. 311; *Whorton v.*

[Cary v. Simmons.]

*Moragne*, 59 Ala. 641; *Wells v. Brown*, 83 Ala. 162; *Chandler v. Wynne*, 85 Ala. 301; *Trimble v. Fariss*, 78 Ala. 260; *Grimball v. Mastin*, 77 Ala. 553; *Scott v. Ware*, 64 Ala. 174; Code, § 2159; *Alexander v. Fisher*, 18 Ala. 374.

F. LAW, and NORMAN & SON, *contra*, cited *Knight v. Godbolt*, 7 Ala. 304; *Milam v. Ragland*, 19 Ala. 85; *Bailey v. Munden*, 58 Ala. 104.

McCLELLAN, J.—1. It did not appear by any matter embraced in the submission, from the decree on which this appeal is prosecuted, that the jurisdiction of the Probate Court had been put in exercise for the settlement of the estate of complainant's intestate before the filing of the bill. The chancellor, assuming, as of course he was authorized to do under the circumstances, that the active jurisdiction of the Probate Court had not attached, seems to have been influenced, to some extent, by a consideration of this fact in the conclusions he reached as to the sufficiency of the bill to invoke the interposition of a court of equity. Had the bill been filed by the distributees of the estate, it would have been proper to look to this fact; but not so on a bill exhibited, as this one is, by the personal representative. Whether proceedings for final settlement are pending in the Probate Court or not, the administrator can not come into chancery, without averring some specific fact or circumstance which renders a resort to that court necessary. There must be an allegation of some ground of equitable jurisdiction.—*McNeill v. McNeill*, 36 Ala. 109; *Teague v. Corbitt*, 57 Ala. 537; *Weakley v. Gurley*, 60 Ala. 409.

2. Two grounds are set up and relied on in this bill as predicates for equitable action. One of these is, that the administrator had made advances to the minor heirs of his intestate, for their support and education, and also to disincumber certain lands which belonged to them; for which, on final settlement, it is insisted, the Probate Court was without power to allow him credit. As to the advances made for the support and education of the infant distributees, we have no doubt that the statute of 1877, now constituting sections 2159 and 2160 of the Code, confers ample authority on the Probate Court to allow the administrator credit on his final settlement. The right to such credit was recognized in equity before that act. The operation of the act was on the remedy, rather than on the right itself; and for this reason, the

statute would have been accorded a retrospective operation, without the express provision to that effect embodied in its section. It is, therefore, immaterial, that the third section has been repealed by omission from the Code of 1886; and the fact that the advances claimed were made prior to the passage of the act, does not defeat the jurisdiction of the Probate Court.—*Ex parte Buckley*, 53 Ala. 42; *Eskridge v. Ditmars*, 51 Ala. 245.

3. As we understand the averments of the bill in relation thereto, the Ossabaw land had not been the property of complainant's intestate, and did not belong to the estate at all, but had come to the distributees of the estate from some other source. We are unable to to see what right the complainant had, *as the administrator* of the Cary estate, to make advances to disincumber lands with which neither the estate nor its distributees, as such, had any connection. It may be, the complainant, who is alleged to be a tenant in common with the defendants in that land, would have, in that capacity, a claim against them for money advanced for the common benefit; but he would not be entitled, either in law or equity—either in the Probate or the Chancery Court—on final settlement of his administration, to a credit for such advances. They were not made either for the support or education of the minors, or in the prosecution of the business of the estate.

4. The other facts relied as giving equity to the bill are, that in and for the years 1869 and 1870, the complainant and the intestate constituted a partnership; that the partnership was dissolved December 30, 1870, leaving his co-partner largely indebted to complainant; that she died in 1873, without a settlement of the partnership accounts, and that the partnership is still unsettled; and the bill prays to have an account taken of said partnership accounts and transactions, and that the amount found thereon to be due the complainant may be allowed him on final settlement of her estate. It further appears by the bill, that on January 3, 1871, the partnership having been dissolved, and its business abandoned, by mutual consent, on December 30th next before, the intestate removed to the State of Georgia, and continued to reside there until her death. The statute of limitations of six years is set up by the heirs in their demurrer to the bill. The statute began to run immediately on the dissolution of the partnership, and the subsequent death of Helen Cary did not, of itself, suspend its operation,

[Cary v. Simmons.]

as against her heirs.—*Daniel v. Day*, 51 Ala. 431.   But her removal and continued absence from the State did have that effect.—*Minniece v. Jeter*, 65 Ala. 222.   And while the statutory exception, in this connection, results only from personal absence, as distinguished from domicil elsewhere ; yet the averment of residence in another State will, on demurrer, be construed to mean, that the person against whom the exception is invoked has been absent during the period of such residence.—*State Bank v. Seawell*, 18 Ala. 616; *Stevenson v. Anderson, ante,* 208.   The appellants rely, therefore, on the lapse of time since the complainant became—in 1873—the administrator of the estate of their ancestor, as perfecting the bar of the statute against his claim to have an account taken of the partnership, and a decree in his favor on final settlement for what ever may be found due him in that behalf.

It is conceded, that such an account might be had, and a decree passed thereon, if there were any personal assets of the estate in his hands to be applied in satisfaction of it; and this, notwithstanding the lapse of sufficient time to perfect the bar.—*Knight v. Godbolt*, 7 Ala. 304; *Milam v. Ragland*, 19 Ala. 85.   But the bill shows, construing its averments most strongly against the complainant, that the administrator has no personal assets of the estate in his hands.   Not only so, but it appears that the personalty of the estate was of the gross value of $216.10, which, the presumption is, has long since been administered; and even should that sum be considered as still in the hands of the personal representative, it is manifestly inadequate to the satisfaction of the decree for which he prays.   It thus becomes evident, that the relief on account of the partnership sought by the complainant must be worked out by the subjection of the lands of the estate, or of the rents of those lands, to the payment of the amount found to be due the complainant on the settlement of the partnership.   These lands descended to the heirs upon the death of Mrs. Cary.   The rents subsequently accruing from them belonged to the heirs.   Neither the lands, nor the issues therefrom, became the assets of the estate for the purposes of administration.   True, the personal representative had, under statutory provisions, the right to intercept the descent, and apply both the rents and the land itself, if need be, to the payment of the debts of the estate.   But, when this is sought to be done, the heirs have a right to interpose any objection to such a disposition

34

[Baker v. Swift & Son.]

of their property which could have been made by their ancestor. To any suit or proceeding for this purpose, instituted by the administrator, whether to secure a debt due himself or to any other creditor of the estate, they may set up and rely on the statute of limitations, as against the debt sought to be thus collected. The administrator was under no disability, certainly after the lapse of eighteen months from the grant of letters, with respect to proceeding in equity for a settlement of this partnership, and of his administration of the estate. He had at that time the same right to file a bill for those purposes, so far as disability or incapacity of parties to sue and be sued is involved, as he had to do so in 1889—fifteen years afterwards—when this bill was filed. The bill, under the circumstances of the case, should have been filed within six years after the lapse of eighteen months from the grant of letters of administration. As against the heirs, and for the purpose of subjecting either their lands or the rents thereof to the payment of the claim of the personal representative, growing out of the partnership transactions, the case made by the bill was barred by the statute of limitations of six years.— *Wells v. Brown*, 83 Ala. 162; *Chandler v. Harris*, 85 Ala. 312; *Harwood v. Harper*, 54 Ala. 659; *Teague v. Corbitt*, 57 Ala. 529; *Mundin v. Bailey*, 70 Ala. 69; *Scott v. Ware*, 64 Ala. 174; *Trimble v. Farris*, 78 Ala. 260.

The decree of the chancellor on the demurrers is not in harmony with the foregoing views, and is reversed and the cause remanded.

Reversed and remanded.