# Stovall *et al* Admrs. v. Clay *et al.*

*Bill in Equity for Settlement of Administration, of Partnership, and for Accounting with an Heir.*

1. *Partnership; accounting between partners; limitations.*—Where a co-partnership has been dissolved for fifteen years, and neither partner has taken any steps to bring about a settlement for more than six years after the last known co-partnership transaction, the right to have an account and settlement of the co-partnership dealings is barred.

2. *Executors and administrators; right to rents and profits of lands.*—While the personal representative can intercept the descent of land, this is a bare power, to be exercised in the mode and for the purposes expressed in the statute—to pay debts of the deceased, or to effect an equitable division among the heirs or devisees. When the necessity does not exist, the personal representative cannot disturb the possession of the heirs or devisees.

3. *Same; enforcing promise of one heir or distributee to account to others.*—Where one heir or distributee of an estate, who has received more than his proportionate part of the estate, promises the other heirs or distributees to account with them, therefor, the admidistrator of such estate cannot enforce such promise. This must be done by the parties to whom it was made.

4. *Same; removing administration into chancery court.*—A personal representative cannot remove the administration into a court of chancery unless he shows some specific equity, which the probate court, by reason of its limited jurisdiction, is incompetent to settle. This equity exists when the affairs of the estate are so greatly involved that the representative cannot administer it without injustice to himself, or injury to the estate, except under the directions of a court of equity.

APPEAL from Jackson Chancery Court.

Heard before Hon. THOS. COBBS.

This bill was filed by the appellants, W. H. Stovall, and F. A. Bostic, as administrators of the estate of R. W. Clay deceased, against M. A. Clay and the other heirs of said R. W. Clay. The allegations of the bill were in effect as follows : That in 1870 or 1871, R. W. Clay and M. A. Clay formed a mercantile partnership which continued until 1879, all the capital being contributed by

R. W. Clay. It averred that M. A. Clay collected and appropriated to his own use, several mortgages belonging to the firm. R. W. Cay died intestate in 1886, leaving a widow, since dead, and the defendants, as his only heirs and distributees. That after his death, M. A. Clay took charge of his estate, collected all debts due it, and the late partnership, appropriating them to his own use. It was also alleged that before the death of R. W. Clay, M. A. Clay acted as his agent and took in his own name, and appropriated the proceeds of certain mortgages executed to secure debts due R. W. Clay, and after the latter's death continued to do so, and to sell lands belonging to the estate, and thus absorbed the entire estate. The first administration on the estate of R. W. Clay was granted to complainants by letters dated 16th day of May, 1893. The bill further alleged that nothing in regard to the administration had been done in the probate court, and that the administration was so complicated, that the aid of the chancery court was necessary to an equitable settlement thereof. It also alleged that all debts due by the estate of R. W. Clay had been discharged by M. A. Clay. By amendment, it was averred that M. A. Clay, recognizing that he held the estate of the father as a trustee, promised his sisters that after the death of their mother, he would settle with them for their interest in the estate, but had failed to do so, and the sisters had failed to bring suit against him by reason of their confidence in his promise.

The prayer of the bill is for an accounting of the affairs of the partnership between R. W. and M. A. Clay, that the latter be made to account for all rents, profits and other sums received by him that belonged to the estate, and that the court would take jurisdiction of the administration.

The defendant M. A. Clay demurred to the bill on the following grounds (1) The remedy at law is adequate. (2) That the bill was multifarious. (3) The bill showed no cause authorizing a court of chancery to take jurisdiction of the administration. (4) That the bill showed that there was no necessity for the administration, and that any suit should be by the heirs and distributees. He also demurred to that part of the bill seeking to recover lands and rents, alleged to belong to the estate, on the ground that the bill showed no reason for

[Stovall *et al.* Admrs. v. Clay *et al.*]

the interception of the descent. Also, he demurred to those parts of the bill asking a settlement of the partnership affairs, and accounting for what it was alleged he received as agent, on the ground that they were barrred by the statute of limitations.

These demurrers were sustained, and the complainants appealed, assigning as error, the ruling upon the demurrers.

J. E. BROWN, D. D. SHELBY and R. W. WALKER for appellants.—1. M. A. Clay's dealing with the estate made him an executor *de son tort.* 7 Am. & Eng. Enc. L. 182; *Simonton v. McLane,* 25 Ala. 353; *Abernathy v. Bankhead,* 71 Ala. 190.

2. The chancery court alone can compel a settlement from an executor *de son tort.* 7 Am. & Eng. Enc. L. 180.

3. The acts of M. A. Clay made him a constructive trustee for the persons beneficially interested. *Chambers v. Chambers,* 98 Ala. 454; 10 Am. & Eng. Enc. L. 73, 74.

4. Only a court of equity takes cognizance of such a trust. *Donovan v. Haynie,* 67 Ala. 51; *Kirby v. Lake Shore R. R.* 120 U. S. 134; 3 Pom. Eg. Jur. § 1421; 6 Am. & Eng. Enc L. 720.

5. As shown by the amendment, M. A. Clay admitted a trust until less than a year before the filing of the bill, hence the claim is not barred by the statute of limitations. *Causler v. Wharton,* 62 Ala. 358; *Haynes v. Short,* 88 Ala. 562; *Gilmore v. Ham,* 40 Am. St. Rep. 554.

W. A. GUNTER and W. L. MARTIN, *contra.*—1. There being no debts, the administrator had no concern with the land. *Lee v. Downey,* 68 Ala. 98; *Trimble v. Fariss,* 78 Ala. 260; *Nelson v. Murphy,* 69 Ala. 598; *Owens v. Childs,* 58 Ala. 113; *Woods v. Legg,* 91 Ala. 512.

2. As a bill to settle a partnership, it is barred by the statute of limitations of six years. *Bradford v. Sikes,* 32 Ala. 134; *Wells v. Brown,* 83 Ala. 161; *Brewer v. Brown,* 68 Ala. 210; *Haynes v. Short,* 88 Ala. 562; *Scott v. Ware,* 64 Ala. 185; *Cameron v. Cameron,* 95 Ala. 344.

3. The bill shows no special reason for going into equity. *Cary v. Simmons,* 97 Ala. 524; *Harland v. Person,* 93 Ala. 273; 3 Brick. 334, § 65.

[Stovall *et al.* Admrs. v. Clay *et al.*]

4. The promise to the sisters cannot be enforced by the administrator.

HARALSON, J.—This bill is filed for the purpose, amongst other things, of settling a mercantile co-partnership between Russell Clay, deceased, and the appellee, M. A. Clay, one of the defendants below. This co-partnership was formed, some time in the year 1870 or 1871,—the exact time is not stated. Russell Clay was the father of M. A. Clay, and it is averred, that said Russell furnished all the capital, and M. A. Clay owned no interest in it. It is shown that the co-partnership "continued to do business until the year 1879." In addition to its regular business of buying and selling goods, the firm loaned money and took mortgages to secure the same, and purchased real estate, and it is charged that M. A. Clay collected and retained for his own use, the amounts secured by said mortgages. All this went on in the life-time of Russell Clay,—for more than six years after the co-partnership was dissolved by closing up its business. Said Russell died intestate, in December 1886. He left a widow and several children, all of whom, including said M. A. Clay, are averred to be over twenty-one years old, and are made parties defendants to the bill. No administration was ever had on the estate of said Russell, until the appellants were appointed his administrators by the probate court, on the 16th of May, 1893. It is further averred, that after the death of said Russell, said M. A Clay took possession of the entire estate of the former, both real and personal, collected the debts due the estate and the debts due the firm of R. W. and M. A. Clay, and used the entire property and estate of said decedent as his own, and has possessed himself of and claims everything as belonging to him. The wife, Matilda Clay, died in 1892, and this bill was filed on the 20th day of July, 1893, about seven years after the death of said Russell, and more than fourteen years and a half, since the year said co-partnership ceased to transact business. Not a single co-partnership transaction is shown to have occurred after the year 1878, nor is it averred that any settlement of said co-partnership has ever taken place. After a co-partnership has been dissolved for such a length of time, and neither partner has taken any steps to bring about a set-

tlement, for more than six years after the last known
co-partnership transaction, it has been long and well set-
tled, that the right to have an account and settlement of
the co-partnership dealings is barred. *Bradford v. Spyker*,
32 Ala. 135; *Brewer v. Brown*, 68 Ala. 210; *Wells v.
Brown*, 83 Ala. 161; *Chandler v. Wynne*, 85 Ala. 301. It
is manifest, therefore, that for the purpose of settling
said co-partnership, this bill cannot be maintained, and
the demurrer to that part of it was properly sustained.

2  The bill is equally unfortunate, as to that part of it
which seeks to charge the defendant, M. A. Clay, with
the rents, income and profits arising from the lands be-
longing to said estate, which are alleged to have come
into his possession, or under his control, and with the
proceeds of the sales of such lands as are alleged to have
been made by him. It is alleged, that "the said Russell
W. Clay died intestate, owing but few debts. His entire
indebtedness did not exceed five hundred dollars, and
such debts have been paid off and discharged by the said
M. A. Clay, with money which was the property of
decedent. There was no administration of the estate of
Russell W. Clay prior to the appointment of complain-
ants. No property has yet come to the hands of com-
plainants. The entire estate of deceased is now in the
hands of the said M. A. Clay." For what purpose,
then, do these administrators seek to recover these real
assets? They do not belong to them on the facts al-
leged, for the purposes of administration, but belong to
the heirs, and there being no debts to be paid, the exist-
ence of the administration itself, offers no bar to the
collection of them from the appellee by suit at law by
the heirs if otherwise entitled. The relations of an ex-
ecutor or administrator to the real estate of his testator
or intestate, are regulated by statute in this state, and
are well settled and understood. He has no estate or
interest in the lands of the deceased whom he represents.
They pass, as at common law, to the devisee, or in case
of intestacy, to the heir, at the instant of the death of the
ancestor, subject to be intercepted, in either case, by the
exercise by the personal representative, of the power
conferred by statute. But this is but a bare power with
which the statute clothes the personal representative, to
be exercised in the mode and for the purpose expressed
in the statute,—to pay debts of the deceased, or to effect

an equitable division between the heirs or devisees. We may repeat what was said in one of the cases on the subject as especially applicable to the case in hand: "While by no act of the heir or devisee can the power be frustrated, the existence of the power itself depends upon the existence of the necessity for its exercise—the payment of the debts of the testator or intestate. When the necessity does not exist,—when there are no debts chargeable on the lands,—it would be more than idle and useless ceremony, to suffer the personal representative to disturb the possession of the heir, or of the devisee, or of the alienee of the one or the other. A just and prudent personal representative would not, then, assert the power, for his only duty would be, if he could assert it, to receive possession in one moment, and restore it in the next. It is not for any such purposes the statute confers the power and authorizes its exercise." *Lee v. Downy*, 68 Ala. 98; *Calhoun v. Fletcher*, 63 Ala. 580; *Tyson v. Brown*, 64 Ala. 244; *Woods v. Legg*, 91 Ala. 512; 3 Brick. Dig. 464, §§ 146-156. These administrators have not only failed to show that any necessity existed for the exercise of these statutory powers by them over these real assets, for the purpose of administration, but they have shown, that no such necessity ever existed. The demurrer to this branch of the bill was, therefore, properly sustained.

3. The appellants sought, by an amendment to the bill, —in which they alleged that said M. A. Clay promised his sisters, the other defendants, to account to them for their share of their father's estate in said co-partnership assets, and for the other property of their father in his hands, which promises he continued to make up to the death of their mother, in 1892,—to show that said M. A. Clay was an administrator *de son tort* of said estate, and became a constructive and continuing trustee for the parties interested, who could in equity be held to an account to settle his trust, and that such trust being continuous, was not barred by the statute of limitations of six years. But this amendment is of no avail, since such a promise, if ever made to the sisters, could, in no event, be enforced by these administrators. If by virtue of such promise, the defendant, M. A. Clay, came under trust relations to his sisters, that fact did not bring him in the same relations to the complainants as administra-

[Berney v. Steiner Bros.]

tors. The sisters are all of age, and are competent to sue at law or equity to enforce their own rights in the permises, if they have any.

4. These administrators seek by their bill to remove the administration and settlement of the estate of their intestate from the probate to the chancery court. This, it has been repeatedly held, cannot be done by them, unless they show some specific equity, which the court of probate, by reason of its limited jurisdiction, is incompetent to settle. This equity may be said to exist, when the affairs of the estate are so greatly involved, that the personal representative cannot administer it without injustice to himself or injury to the estate, except under the direction of a court of equity. *Harland v. Person*, 93 Ala. 273; *Cary v. Simmons*, 87 Ala. 524. The administrators have failed to show that any such ground for the removal of the administration of the estate from the probate to the chancery court, exists.

5. We need not consider the ground of multifariousness of the bill; for, if not multifarious, that fact, from the view we have taken of the case, would avail appellants nothing.

We find no error in the decree of the chancery court, of which appellants can complain.

Affirmed.