285 So.2d 474

**Forrest E. WATERS, Jr.**

v.

**Shirley H. COCHRAN, Jr.**

**SC 180, 180–X.**

Supreme Court of Alabama.

Aug. 30, 1973.

As Modified on Denial of Rehearing
Nov. 8, 1973.

Williamson & Taber, Greenville, for appellant.

Vickers, Riis, Murray & Curran, Mobile, Poole & Poole, Greenville, for appellee.

**612**

COLEMAN, Justice.

Respondent, Waters, appeals from adverse decree in suit for partnership accounting and settlement. Complainant, Cochran, has made cross-assignments of error.

In the bill of complaint, complainant avers that in the fall of 1958, he and respondent entered into a partnership agreement for the purpose of real estate development and sales; that the partners were to share equally in profits and losses; that the business resulted in a loss of more than $60,000.00; that complainant executed a deed of trust for benefit of creditors on September 1, 1961; that complainant has subsequently made payments to creditors through the trustee, and respondent has subsequently made payments to one or more creditors in partial satisfaction of partnership debts; and that complainant has made demand on respondent to pay his share of the partnership debts but he has failed and refused to do so..

Complainant prays for an accounting, that the account of each partner with the partnership be stated, that respondent be ordered to pay his share of the debts, and for general relief.

The original bill was filed in Mobile County. Respondent's plea in abatement to the venue was held sufficient and the cause was transferred to Lowndes County.

Respondent filed his answer denying that the parties entered into a partnership and other matters averred in the bill.

The court entered an order on pretrial conference held under Equity Rule 38. As here pertinent, the order states in effect that

1. The parties agree that trial is to be based on original bill and answer, respondent's defense being the general issue and statute of limitations or laches.

2. On the merits, two principal issues are to be decided: (a) Whether a partnership existed, and, if so, what percentage each partner owned; (b) If partnership existed, what partnership debts have been paid by complainant to which respondent should contribute.

3. Complainant claims there existed an equal partnership between the parties. Respondent denies that partnership existed and contends that he was an employee of complainant and had no responsibility for debts incurred in operation of complainant's business.

4. On the question of the debts of the business organization, whether or not a

partnership, the parties stipulated that a certain paper, entitled "Computation of Amounts Claimed on Cochran-Waters Debts," is a true and correct statement of the debts of the organization as of the time it went out of business, all of which have now been paid by complainant except one item which is not here material.

Evidence was heard ore tenus by the court. In outline, the evidence shows that complainant and respondent were fraternity brothers and roommates at college. Complainant, after leaving college, returned to Mobile. Respondent transferred to another school, and complainant visited respondent there in the spring of 1958. They discussed respondent's coming to Mobile and engaging in business with complainant. After graduation, respondent and his family moved to the Mobile area and he was employed at S. H. Cochran Furniture Company, owned by the Cochran family, as a salesman on a salary of $100 per week and a commission on sales.

In the fall of 1958, respondent went into business with complainant and two others in an insurance and real estate operation. This arrangement lasted about two months. Complainant and respondent then engaged in business under the name: "Cochran-Waters Real Estate Company." Complainant obtained a real estate broker's license and respondent obtained a real estate salesman's license. This business continued until June, 1960. It was a general real estate business engaged in sale of real estate and construction of houses. Complainant was primarily in the sales activity and respondent in the construction activity.

In June, 1960, two corporations were formed. Complainant, respondent, and another were the original stockholders. One corporation was to construct houses and the other was to sell real estate and insurance. Respondent subscribed to twenty per cent of the stock. Complainant and the third party each subscribed to forty per cent. The personal property of the alleged partnership was transferred to the corpora-tions. Respondent contends that complainant received credit for the partnership personal property in satisfaction of his subscription for stock in the corporations. Respondent gave a note for his subscription and later paid the note. Complainant testified as follows:

"Q  And your testimony is that in acquiring the stock from the corporation you got credit for the transfers and Forrest did not?

"A  No, that's not my testimony.

"Q  What is your testimony?

"A  My testimony is that we both transferred this as on the Bill of Sale, and we put up additional cash and Forrest didn't have cash, and he gave the corporation a note.

"Q  Are you stating that Forrest got some equity out of the corporation for his interest in these two documents?

"A  Yes."

Respondent testified as follows:

"Q  Now, Forrest, there is in evidence Respondent's Exhibit No. 3, photocopies of two bills of sale, one for a 1958 Ford Pickup Truck and one for a 1952 Ferguson Tractor, showing they are conveyed to Cochran-Waters & Corte, Inc., and they are executed by Cochran-Waters Real Estate Company, and I will ask you did you sign those two bills of sale?

"A  Yes I did.

"Q  Did you receive any credit for your equity to be applied against what you owed for your equity in the corporation by transferring these properties?

"A  I did not.

"  .   .   .

**614**

"Q Do you know whether or not Shirley Cochran paid for his equity in his corporation by getting credit twelve hundred and ten dollars on the pickup truck, and twelve hundred and fort*h* dollars on the tractor, some amount for the furniture and fixtures, and paid the balance in cash?

"A Yes.

"Q Did you make any claim to the corporation for some credit against your property, or Cochran-Waters Realty Company property that was transferred to the corporation?

"A No."

Certain other evidence is summarized in briefs as next set out. Respondent states in brief:

"During the periods of time that Cochran Waters Real Estate Company operated, it sustained business losses each tax year. There was no partnership income tax return filed for this business entity. With Cochran's income tax returns for the years 1959, 1960 and 1961, there was a Schedule C, Profit (or Loss) From Business or Profession, included therein, whereunder Cochran showed Cochran Waters Real Estate Company to be a sole proprietorship and charged, against himself personally, all the business losses incurred, which represented a substantial income tax savings to Cochran. (Tr. pp. 56, 57, 58, 60, and 61). Both Cochran and Waters testified that the salary paid Waters was reflected as a business deduction on Cochran's income tax return and, although Cochran did not recall (Tr. p. 56), Waters testified that social security and other withholding taxes were withheld from his salary each week and his income was reported on W2 forms and income taxes paid thereon. (Tr. p. 98)."

Complainant states in brief:

"There is considerable testimony in the record with respect to the fact that Cochran deducted the entire losses of Cochran-Waters on his individual income tax return. This was done on the advice of a CPA, since Cochran had income from other sources against which he could use the losses as an offset. There was no testimony as to what deductions Waters took for those years."

Other evidence is hereafter referred to in consideration of the errors assigned.

Two or three months after formation of the two corporations, complainant sold his stock and went into business on his own account. He undertook to sell and did sell the properties of Cochran-Waters Real Estate Company which had not been disposed of, respondent joining in execution of the deeds, the last of which bears date of November 9, 1961.

Respondent left the Mobile area in July, 1961, and returned to Fort Deposit.

The court rendered final decree finding as follows:

1. Beginning in 1958, complainant and respondent formed a partnership and each was obligated to divide equally the profits and losses, and said partnership existed at all material times and has never been dis solved.

2. The partnership business was unsuc cessful having no assets and a large indebtedness in the fall of 1961 when the partnership went out of business except for winding up its affairs.

3. The last remaining assets of the partnership were two lots which were conveyed back to the sellers in consideration for the cancellation of the unpaid purchase price.

4. All debts of the partnership were debts to third parties as stipulated in the pretrial order.

5. Complainant ascertained the amount of the partnership debts in August, 1961, and requested respondent to sign note evidencing his obligation to pay his share, but

he refused to do so. On September 1, 1961, complainant established a trust for creditors through which he paid all debts of partnership. Last payment was made August 14, 1969.

6. Respondent is obligated to pay to complainant one half of partnership debts paid by complainant, together with interest from date of this decree. Interest on respondent's half of the debts paid prior to the decree by complainant amounts to $12,870.53, but complainant is not entitled to recover this interest.

7. Complainant deducted, for income tax purposes, the entire losses of the partnership on his individual income tax returns, resulting in a benefit to complainant in diminished federal income taxes, which the court is of opinion should be credited against the liability of respondent to complainant.

The court decreed that the partnership be dissolved, and that respondent is indebted to complainant in sum of $41,857.19, for which judgment is rendered in favor of complainant, and, except as hereafter limited, execution on the judgment may issue.

The court further decreed that respondent may pay the judgment, with interest thereon, in thirty monthly installments and that execution be suspended for such time as respondent shall promptly make the monthly payments.

*On the appeal*

*Assignment of Error No. 11*

Respondent asserts that the trial court erred in allowing complainant to recover on a claim that was barred by the six-year statute of limitations.

Respondent says that a bill for accounting and settlement of a dissolved partnership must be brought within six years after the time when the partnership ceased doing business, citing Title 7, § 21, Code 1940; Bradford v. Spyker, 32 Ala. 134; Cary v. Simmons, 87 Ala. 524, 6 So. 416; Stovall v. Clay, 108 Ala. 105, 20 So. 387; and Brody v. Maril, 208 Ala. 464, 94 So. 764. Complainant agrees in brief that the governing statute is six years.

This suit was commenced by the filing of the bill of complaint on August 31, 1967. Respondent contends that there was no "partnership transaction" subsequent to August 30, 1961. The question for decision is whether under the evidence the trial court erred in finding that the suit was not barred by the six-year statute. The difficult point is deciding when the statute of limitations begins to run.

In 60 Am.Jur.2d, page 178; Partnership, § 275, the following statements appear:

"A right of action between partners for an accounting and settlement after the dissolution of the firm is barred after the expiration of the statutory period from the time when the cause of action accrues; the only controversial question concerns the time when the cause accrues. In general it may be said that the precise time when such a right accrues so as to set in motion the statute of limitations depends on the circumstances of each particular case. It cannot be said, as a matter of law, that the statute begins to run against an action between partners for an accounting and settlement on the date of the dissolution, or that the operation of the statute relates back to the date of the dissolution. It is, however, well settled that the statute does not in any event begin to run until after the dissolution of the partnership.

"Where one partner continues winding up the affairs of the partnership after dissolution, collecting its assets or discharging its debts, the statute does not begin to run until after the business of the firm is concluded. . . ."

In Stovall v. Clay, supra, this court affirmed a decree sustaining demurrer to a bill brought by the administrators of a deceased partner against the surviving part-

ner and heir of deceased partner. The bill was filed for the purpose, among other things, of settling the accounts of the prior existing mercantile partnership. This court said:

"... The wife (of deceased partner), Matilda Clay, died in 1892, and this bill was filed on the 20th day of July, 1893, about seven years after the death of said Russell (the deceased partner), and more than fourteen years and a half, since the year said co-partnership ceased to transact business. Not a single co-partnership transaction *is shown to have occurred after the year 1878*, nor is it averred that any settlement of said co-partnership has ever taken place. After a co-partnership has been dissolved for such a length of time, and neither partner has taken any steps to bring about a settlement, for more than six years after the last known co-partnership transaction, it has been long and well settled, that the right to have an account and settlement of the co-partnership dealings is barred. (Citations Omitted) ..." (Par. Supplied) 108 Ala. at 108, 109; 20 So. at 890.

■ Thus, in *Stovall*, the length of time which has elapsed after "the last known co-partnership transaction" is an element to be considered in determining whether a suit for partnership accounting is barred by the six-year statute.

In Cannon v. Copeland, 43 Ala. 201, the surviving partner brought suit to recover from the estate of his deceased partner one half of the money ($45,092.52) the surviving partner had paid to extinguish the debts owed by the partnership at the time of deceased partner's death. The trial court dismissed the bill on the ground that the complainant's demand was barred by the statute of non-claim. This court reversed, saying, inter alia, to wit:

"The claims of a surviving partner against the estate of his deceased partner, are to be treated in the same manner as the claims of the other creditors.

—Collyer on Partnership, p. 300. His right to contribution does not accrue until he has exhausted the assets, and paid more of the debts than the assets amounted to. The extent of his claim to contribution can not be ascertained until the partnership liabilities are discharged. The administration of the partnership business, is an open account between him and the estate of his deceased partner, and the statute of limitation and of non-claim begin to run from the last item of the account. There is no hardship in this. The representatives of the deceased partner may proceed against the survivor for an account, if he delays unnecessarily, and may have a receiver appointed, if he be inefficient or unworthy." (43 Ala. at 203, 204)

Thus, in Cannon, the "last item of the account" was considered material in determining when the statute began to run where the surviving partner was winding up the business by collecting the assets and paying the debts of the partnership.

See Riddle v. Whitehill, 135 U.S. 621, 10 S.Ct. 924, 34 L.Ed. 282, where the court said:

"... Where, however, partnership affairs are being wound up in due course, without antagonism between the parties, or cause for judicial interference, where assets are being realized upon and liabilities extingushed, and no settlement has been made, the cause of action has not accrued, and the statute has not begun to run. ..." (135 U. S. at 637, 10 S.Ct. at 929).

The court, in *Riddle,* cites and comments on Causler v. Wharton, 62 Ala. 358.

In brief, respondent argues to the effect that the last partnership transaction in the instant case occurred on August 27, 1961, when respondent joined in the execution of three deeds which were forwarded to him at Fort Deposit, Alabama. The deeds conveyed property which was an asset of Cochran-Waters Real Estate Company.

The date of these deeds (August 27, 1961) is more than six years prior to filing of the bill on August 31, 1967.

On the other hand, copies of two deeds (dated November 9, 1961, and signed by complainant and respondent and their wives) were introduced in evidence. These two deeds describe the grantors as "S. H. COCHRAN, JR., and FORREST WATERS, JR., doing business as COCHRAN-WATERS REAL ESTATE COMPANY, a partnership, joined by their wives, ALICE K. COCHRAN and JO ANNE F. WATERS, respectively . . . ."

Respondent testified that the two deeds were executed by respondent and his wife before they left Mobile and were left "strictly for the convenience of" complainant doing business.

Respondent testified that when he left Mobile he left certain documents that bore his signature, with the understanding that they would be filled out and delivered at some later date to whomever they were made out to; and that was done with his authority and consent. He testified that they were going to be delivered to "some Grantor" (sic) at a date subsequent to when he left Mobile.

An exhibit to the pre-trial order, entitled "COMPUTATION OF AMOUNTS CLAIMED ON COCHRAN-WATERS DEBTS," shows payments made by complainant on the business debts on the following dates: March 12, 1962; October 12, 1962; February 27, 1963; and August 14, 1969.

On the evidence mentioned, we are of opinion that the evidence supports a finding that "partnership transactions" did occur within six years next preceding the filing of the bill of complaint on August 31, 1967, and that "the last item of the account" is within six years next preceding the filing of the bill of complaint.

Assignment No. 11 is not sustained.

*Assignment of Error No. 5*

Respondent assigns as error the ruling of the trial court that at all times material hereto an equal partnership existed between complainant and respondent.

Respondent cites Watson v. Hamilton, 180 Ala. 3, 60 So. 63, wherein this court made the following statements:

"A partnership is never created by implication or operation of law, apart from an express or implied agreement to constitute the relation. This doctrine must not be confused with holding persons liable as partners by estoppel, or in a few states by sharing profits. Bates on Partnership, § 3. While there must be a contract between the parties, express or implied, neither writing, nor any other particular form, need be observed in the formation of a trading or laboring contract. Mutual consent of two or more competent minds can make this, as it can make other contracts. And, like most other contracts, it may be implied from conduct and circumstances, if significant enough to convince the mind. . . . 'To constitute the relation inter se, the contract must extend beyond a common agreement to share in the profits. It must equally bind the parties to bear the burden of the losses.' Goldsmith v. Eichold, 94 Ala. 116, 10 So. 80, 33 Am.St.Rep. 97. . . . On the question whether the parties are partners inter se, the interest of no third person being involved, stronger proof is required to establish the partnership than when the question arises as between the alleged partners and third persons. A partnership as to third persons may arise by mere operation of law against the parties by way of estoppel, etc.; but as between the parties themselves it only exists when such is their actual intention.—Chisholm v. Cowles, 42 Ala. 179." (180 Ala. at 5, 6, 60 So. at 63)

Respondent contends, as we understand his argument, that the evidence will not support a finding that a partnership agree-

ment existed between complainant and respondent because there is no evidence of an express agreement that the parties would share in the losses arising out of the partnership business.

Complainant testified that he and respondent formed a partnership under the name, Cochran-Waters Real Estate Company; that the percentage of ownership was "Fifty-fifty"; that profits were to be split equally; that the partnership made construction loans; that both partners signed notes; that mortgages were executed as Shirley Cochran and Forrest Waters doing business as Cochran & Waters Construction Company; that they never discussed losses ". . . really, we didn't anticipate losses"; that the business suffered losses and never made any profits; that each partner drew a salary and expenses; that each partner had credit cards in the business name and the cards were used by both partners; they opened a checking account in the name of Cochran-Waters Real Estate Co., both partners signed the signature card; both partners signed a paper addressed to the bank and entitled "AUTHORITY OF PARTNERSHIP To Open Deposit Account And To Procure Loans"; the paper contains the following recital:

"The undersigned desire to establish with you a desposit and checking account to be known as *Cochran-Waters Real Estate Co.* and hereby certify that the said name is a trade name which we are using in the conduct of an unincorporated business owned entirely by the undersigned as co-partners."

Complainant further testified that both partners signed an agreement whereby they agreed to employ one Jack E. Windham as sales manager. The agreement in pertinent part recites:

"KNOW ALL MEN BY THESE PRESENTS, that, this agreement entered into by and between S. H. Cochran, Jr., and Forrest Waters doing business as Cochran-Waters Realty Company, hereinafter called employer, and Jack E.

Windham, hereinafter called the employee."

Complainant testified that he and respondent executed numerous notes and mortgages jointly as partners. A number of such instruments were introduced in evidence.

Complainant testified that he discussed with respondent the losses which had been incurred by the partnership; that they concluded that they would try to expand operations and make profits to overcome the loss; that after the partnership ceased to build houses he arrived at a figure for the total debts owed by the partnership and discussed with respondent as to how complainant would pay these debts; that complainant and respondent met in the office of an attorney; that complainant showed respondent what they owed; that respondent didn't have any money and was going to give a note for the money; that the attorney prepared the note and respondent said " 'Let me think about it' " and " 'I want to let my Attorney look at it,' " and "we never saw him anymore."

Respondent testified that his relation to the business known as Cochran-Waters Real Estate Company was that he was a salesman for Cochran-Waters, he was to be paid a weekly salary, and was to participate in the profits. He testified that he never had an agreement or understanding with complainant ". . . where the losses were to be divided . . .," and they never had a partnership agreement. Respondent testified that he was supposed to get one half of the profits and that was the understanding between the parties. Respondent testified that he remembered a meeting "last year" with complainant and complainant's attorneys, that respondent was asked to sign a note for a portion of the losses of Cochran-Waters but he never signed the note.

Complainant contends that evidence of an express agreement to share in the losses of the partnership is not required and that an agreement to share in losses

may be implied by virtue of Title 43, § 30, Code 1940, which recites:

"An agreement to divide the profits of a business implies an agreement for a corresponding division of its losses, unless it is otherwise expressly stipulated."

§ 30, Title 43, Code 1940, first appeared as § 9372 of the Code of 1923. In deciding that a bill to dissolve and settle a partnership was not defective when challenged by demurrer this court said:

"The agreement brought forward by the bill in this case, and relied upon by appellee to show the creation of the partnership, was entered on or about the first day of October, 1924. On the 17th day of August, 1924, the Code of 1923 became operative, and with it, of course, section 9372 went into effect. This section reads: 'When division of losses implied.—Any agreement to divide the profits of a business implies an agreement for a corresponding division of its losses, unless, unless it is otherwise expressly stipulated.' This hearing (sic) in the losses is now, as it has always been, an essential requisite of every partnership. Under section 9372 of the Code, unless it is otherwise expressly stipulated, an agreement to share in the profits of a business implies an agreement for a corresponding division of the losses.

"There is nothing in the agreement alleged to have been entered into between appellant and appellee to remove this case from the influence of the above-cited statute. It therefore follows that the agreement entered into between appellant and appellee constituted a partnership between the parties, with all its incidents. The bill contains equity, and is not subject to the demurrer interposed thereto." Copeland v. King, 224 Ala. 160, 161, 139 So. 221, 222.

In Fred Gray Cotton & Gin Co. v. Smith, 214 Ala. 606, 108 So. 532, this court held that the trial court erred to reversal in refusing certain requested written charges, two of which recite as follows:

" 'Explanatory Charge D. I charge you, gentlemen of the jury, that, where there is no agreement between the parties as to who shall bear the losses, the law will imply an agreement on the part of both to bear the losses equally, and, where the agreement is that they shall share equally in the profits, this will constitute a partnership.'

" 'Explanatory Charge (No Number). Gentlemen of the jury, I charge you that, if you believe that there was an agreement between Smith and McClellan whereby they were to share in the profits, the presumption of a partnership arises, and, in order for the plaintiff to recover, he must rebut this presumption; that is, he must prove to you from the evidence that a partnership did not exist.' " (214 Ala. at 606, 108 So. at 533)

Among other things, this court said:

"But the testimony of McClellan tended to show a community of interest in the cotton purchased, though the funds used were those of plaintiff (1 Bates on Partnership, § 35), and an agreement that he was to share equally in the profits with nothing said as to the losses. There are many authorities to the effect that under these circumstances an agreement to share the profits implies likewise an agreement to bear a share of the losses. 30 Cyc. 380; Fourth Nat. Bank v. Altheimer, 91 Mo. 190, 3 S.W. 858.

"This rule has been incorporated as a part of our statutory system by section 9372, Code 1923 . . ." (214 Ala. at 607, 108 So. at 533)

■ Both complainant and respondent testified that each was to share equally in the profits. Under Title 43, § 30, Code 1940, the *Fred Gray* case, supra, and the *Copeland* case, supra, the trial court was authorized to find an implied agreement to share in the losses. The court heard and saw the witnesses testify. Any conflict in the evidence as to the existence of a partnership presented an issue for determina-

tion by the court, and the court's finding will not be disturbed unless plainly and palpably wrong. We are of opinion that the finding that a partnership existed is not due to be disturbed.

Respondent cites a numer of cases to support his argument that Title 43, § 30, Code 1940, is "merely a legislative statement of a rule of evidence, and nothing more," and does not authorize the finding of an implied agreement to share in the losses. All cases thus cited were decided prior to the effective date of § 9372, Code 1923, except the three cases next discussed and numbered (1), (2), and (3).

(1) In Woodson v. Bumpers, 224 Ala. 390, 140 So. 766, this court held that the trial court did not err in refusing the following charge:

"'2. The Court charges you, Gentlemen of the Jury, that if the defendants entered into an agreement to go into the business and divide the profits fifty-fifty, then a partnership was formed.

"'. . .'" (224 Ala. at 390, 140 So. at 767)

This court said:

"[2] 2. The statute, section 9372 of the Code merely states a rule of evidence. An agreement to divide profits alone is not sufficient to create a partnership inter sese; the parties must also be bound to bear the burdens of loss. (Citations Omitted) There was no error in refusing charge No. 2. (Citations Omitted)" (224 Ala. at 391, 140 So. at 767)

█ § 9372 (Title 43, § 30) creates a rebuttable presumption that an agreement to share profits implies an agreement to share losses. Charge 2 in *Woodson* does not state that the presumption created by the statute is rebuttable. If charge 2 in *Woodson* be taken literally, the jury is thereby instructed that a partnership was formed even though the presumption were rebutted. In that respect charge 2 in *Woodson* differs

from the charges in the *Fred Gray* case, supra, and was properly refused. The *Fred Gray* case is one of the citations which is cited in the opinion in *Woodson* but omitted in the quotation from *Woodson* in the instant opinion. In the first paragraph of the opinion in *Woodson*, in holding that affirmative charges with hypothesis were refused without error, this court said:

". . . There were adverse, reasonable inferences that may be drawn from the evidence, and the issue of fact was for the jury. . . ." (224 Ala. at 391, 140 So. at 767)

(2) In Ard v. Abele, 226 Ala. 611, 148 So. 318, this court affirmed a decree overruling a demurrer to a bill for dissolution of a partnership and an accounting. Apparently, appellant had argued that the bill failed to aver facts which showed that a partnership existed in that the bill failed to show an agreement to share losses as well as profits. This court said:

"[2] The bill specifically avers 'the understanding that each partner was to share in the profits and divide the losses of the said firm,' which the argument for complainant (sic) appears to overlook, as well as provisions of our present statute. Section 9372, Code 1923 . . ." (226 Ala. at 611, 148 So. at 318)

(3) In Crum v. Crum, 253 Ala. 163, 43 So.2d 392, this court affirmed a decree dismissing appellant's bill for accounting and settlement of a partnership. This court said among other things:

". . . We do not think that the evidence shows any agreement between J. W. Crum and J. B. Crum to share in the profits of the business and there was no proof of an agreement to share in the losses. . . . Section 30, Title 43, Code of 1940 does not aid the case of appellant, because as pointed out in Woodson v. Bumpers, supra, the statute 'merely states a rule of evidence' and unless there is an agreement to share prof-

its, no agreement to share losses will be implied." (253 Ala. at 166, 43 So.2d at 394)

■ The three cases last discussed are not in conflict with the conclusion in the instant case that the court is not to be reversed for the asserted error in finding that a partnership existed between complainant and respondent. Assignment No. 5 is not sustained.

On the appeal the decree is due to be and is affirmed.

*On cross assignments.*

*Cross Assignments No. 1 and No. 2.*

Complainant asserts that the trial court erred in holding that complainant is not entitled to recover interest on one half of the amount he paid on the debts of the partnership prior to the final decree. Complainant contends that the interest should begin to run from the respective dates when he made the payments and not merely from the date of the final decree.

In 66 A.L.R. at pages 22 and 23, the general rule is stated as follows:

"While, in taking partnership accounts, the question whether interest should be allowed or disallowed depends to a large extent upon the circumstances of the particular case, and no unbending rule can be laid down which will not in individual cases work great injustice, it may be said that, ordinarily in the settlement of partnership accounts, interest should not be allowed until after a balance is struck on a settlement between the partners, unless there is a different agreement between them, or unless, under the peculiar facts and circumstances, the equities demand that interest be charged. . . ."

In 60 Am.Jur.2d, page 187, the writer states:

". . . However, interest may be charged if under the circumstances of the particular case the equities so require. Thus, a trial court may, in its discretion, add interest to the amount owed a partner guilty of a fiduciary breach, or of improper use of funds."

In the instant case no fiduciary breach or improper use of funds is charged or shown.

In Grand Bay Land Co. v. Simpson, 207 Ala. 303, 92 So. 789, this court reversed for allowance of interest in a suit for accounting. One of the reasons for not allowing interest prior to the final decree is stated as follows:

". . . The balance of mutual unliquidated accounts should not bear interest except from the date of the final decree. Were the balances liquidated, no necessity would exist for resort to a court of equity in aid of ascertainment and enforcement, and a suit therefor should have been prosecuted at law. Julian v. Woolbert, 202 Ala. 530–532, 81 So. 32; Grand Bay Land Co. v. Simpson, supra [205 Ala. 347, 87 So. 186]. . . ." (207 Ala. at 306, 92 So. at 791)

In a suit for accounting between joint adventurers, this court again reversed for allowance of interest prior to final decree. The court said:

"In stating the account between appellant and appellee, the special master allowed to appellee interest on the balance found due in his favor dating from October 1, 1916, and aggregating the sum of $9,655.80. The court approved this method of stating the account and overruled appellant's exception filed thereto. This was error. The question was given full consideration by this court in Grand Bay Land Co. v. Simpson, 207 Ala. 303, 92 So. 789, 791, wherein is the following language here pertinent: 'In the instant suit the balance for which the aid of a court of equity was invoked could not be known until the respective mutual, unliquidated accounts were canvassed on ref-

erence and the rendition of final decree approving such finding of the register. The balance of mutual unliquidated accounts should not bear interest except from the date of the final decree. * * * Appellee's insistence is that interest is statutory and runs upon each item of account from its due date. Code 1907, § 4620. If this rule be applied to mutual, unliquidated accounts, it can only be as to ascertained "balance" in money that should have been paid. The balance in favor of complainant could not be ascertained before the reference and its confirmation by the court.' The foregoing represents the general rule in the absence of some special equity, which does not here obtain. 47 C.J. 1255, § 978, 47 C.J. 1182, § 876; Christian & Craft Gro. Co. v. Hill, 122 Ala. 490, 26 So. 149." Lunsford v. Shannon, 221 Ala. 207, 208, 128 So. 215.

The same rule was followed in Clayton v. Monte, 248 Ala. 93, 26 So.2d 255, where the court said:

"This being an accounting between partners and no special equities appearing to avert application of the general rule, interest on said sum will only be due from the date (May 1, 1945) of the rendition of the final decree (Lunsford v. Shannon, 221 Ala. 207, 128 So. 215) and it is so ordered." (248 Ala. at 95, 26 So.2d at 257)

Again in King v. Langham, 272 Ala. 662, 133 So.2d 669, the court reversed for allowing interest prior to final decree, saying:

". . . There appear no special equities to avert application of the general rule, that interest on said sum found to be due appellee will only be due from the date (28 October, 1959) of the rendition of the final decree. . . ." (272 Ala. at 665, 133 So.2d at 671)

█ The trial court, in the instant case, did not err in following the authorities, su-

pra, and not allowing interest prior to final decree.

Complainant cites Reynolds v. Mardis, 17 Ala. 32, and Turnipseed v. Goodwin, 9 Ala. 372, where the court held a partner entitled to interest on money advanced in excess of the amount other partners had contributed. In each of the two cases, there was an express agreement that each partner would contribute an equal share of the money to buy land. In the instant case there is no such agreement.

Complainant cites also Daniel v. Klein, 149 Miss. 135, 115 So. 193, wherein the court held a partner entitled to interest on one half of the money he had advanced to pay the liabilities of the partnership. The opinion does not disclose the circumstances of the case in detail, and no authority is cited to support the holding with respect to interest. That holding in Daniel v. Klein, supra, may be contrary to the holding in the instant case, but, if that be true, we are of opinion that we would not be justified in departing from the rule laid down and followed in the decisions of this court which we have cited and on which we have relied. Cross Assignments 1 and 2 are not sustained.

*Cross Assignments No. 3 and No. 4.*

Complainant asserts that the court erred in finding that the deduction by complainant, on his income tax return, of the entire losses of the partnership resulted in a benefit to complainant which should be credited against the liability of respondent to complainant.

The parties have not cited nor have we found any case dealing with or similar to the question here presented.

Respondent testified that he never took any losses on his income tax return. Complainant states the facts relating to his deduction of the loss on his tax returns as follows:

"On cross examination, Cochran (complainant) testified that he deducted the

losses experienced by the partnership, in the years 1959, 1960 and 1961, on his personal income tax returns for those years. (Tr. pp 56–57). He later testified that this was done on the advice of his C.P.A. (Tr. pp 59–60). Cochran testified that by virtue of taking the entire losses for those years as deductions on his personal income tax returns, he reduced his taxes (Tr. pp 60 and 61). At the direction of the Trial Judge, subsequent to the trial, the amount of this tax benefit resulting from the deduction of the entire losses, as opposed to one-half, was computed by Cochran's C.P.A. and it was found to be $3,585.67. Waters (respondent) testimony was that he was unable to locate any of his personal tax records for the years in question. (Tr. p 98). These are the only facts related to our cross assignments of error three and four." [Parenthesis (complainant) and (respondent) Supplied]

The Supreme Court of Mississippi has said:

"One thoroughly well-established definition of an account is that it is a detailed statement of items of debit and credit arising either out of contract between the parties or some fiduciary relation. * * * Chief Justice Shaw in Whitwell v. Willard, 42 Mass. (1 Metc.) 216, in defining what an account was, said among other things: 'It implies that one is responsible to another for moneys or other things, either on the score of contract or of some fiduciary relation, of a public or private nature, created by law, or otherwise.' ([Miller v. Henry] 139 Miss. [651] at 665, 103 So. [203] at 204)." State ex rel. King v. Harvey, (Miss.), 214 So.2d 817, 819, 820.

In the final decree in the instant case, the trial court found:

"4. All of the debts of the partnership at the time the same went out of business were debts from the partnership to third parties, as stipulated in the pretrial order, including the proceeds of the First National Bank loan of $6,300.00, and *there were no debts due from one partner to the other;*" (Emphasis Supplied)

The deduction of the loss on complainant's tax return was not an item of debit or credit between complainant and respondent. The deduction by complainant did not deprive respondent of any right or any property. Respondent could have taken one half of the deduction on his return. Except for the passage of time, no reason appears why respondent cannot now file an amended return and claim his share of the loss if he reimburses complainant for his share of the loss. The deduction made by complainant is a matter between complainant and the United States. As to respondent, the deduction taken by complainant is *res inter alios acta* and had no effect on the rights of respondent. The deduction was not a partnership transaction. It is not an item of the partnership account. The court found there were no debts due from one partner to another.

According to the record, complainant has paid all debts of the partnership. He has paid the entire loss claimed on his return. As of submission of this cause respondent has not paid his half of the loss to complainant. Complainant has actually sustained the entire loss claimed on his tax return.

No sound reason suggests itself to sustain the proposition that complainant is indebted to respondent, or ought to make payment to respondent for the tax saving which accrued to complainant as the result of his claiming the loss which he actually sustained.

We are of opinion that the decree is in error in ordering that respondent be given credit, and his liability to complainant be reduced, by the amount of the tax saving to complainant which resulted from his taking the deduction for partnership loss on his tax return. On the cross appeal, the decree is due to be and is reversed. Judgment will be here rendered in such

proper amount as to eliminate from the account the credit allowed to respondent in the amount of $3,585.67.

*Cross Assignments No. 5 and No. 6*

The date of the decree appealed from is June 30, 1972. Complainant assigns as error the ruling of the court in staying execution of the judgment. The decree of the court here pertinent recites as follows:

". . . it is therefore ORDERED, ADJUDGED and DECREED:

". . . . . . . . . .

"d. That Complainant have and recover of the Respondent the sum of $41,857.19 and that the costs herein are taxed to Respondent for all of which, except as limited hereafter, execution may issue.

"e. On consideration of the financial hardship which would accrue to Respondent in the event the foregoing judgment had to be paid by him in cash, and in consideration of the fact that those partnership debts paid by Complainant were, themselves, paid in installments under a trust for the benefit of creditors, that Respondent may pay said amount in installments as follows: $15,000.00 cash plus the court costs within thirty days of this order, the balance of $26,857.19 to be paid, together with interest at the rate of 6% per annum, in 28 monthly installments of $1,000.00 per month, and one installment of $912.40, the first of such installments to be due on the 10th day of August, 1972, and one installment to become due and payable on the 10th day of each succeeding month until the whole of said indebtedness is paid. Interest on the balance due, at the rate of 6% per annum, shall be computed on the due date of each installment and so much of each installment as may be necessary shall be applied to payment of the interest and the balance to the reduction of the principal debt. Execution on the judgment in this case is suspended for such time as Respondent shall promptly make the payments as herein set out. In the event Respondent fails to make any one or more of said payments on the date the same becomes due, the balance due under this order shall become immediately due and payable and Complainant may, on application to the Register, secure execution for the entire remaining balance." Title 7, § 508, recites:

"After the lapse of ten days, and within ninety days, from the rendition of a judgment or decree, the clerk or register must issue execution thereon in favor of the successful party, unless otherwise directed by the court or the judge presiding at the trial of the cause or by the written direction of owners of the judgment or his attorney of record. The writ must be signed by the clerk or register, and tested on the day it is issued."

In considering § 508, supra, and § 119, Title 13, Code 1940, this court said:

"The statutes of this state recognize the right of the judgment debtor to a stay of execution for a period of time from the date of the rendition of the judgment. On judgments recovered in the circuit court, the stay is for a period of ten days. § 508, Title 7, Code of 1940; . . .

"The statutory period is allowed the judgment debtor so that he may have an opportunity to consider his future course, to determine whether to continue the litigation by appeal or otherwise, or to satisfy the judgment and thereby prevent the accrual of further costs and expense. In the event he determines to pay off the judgment, the period also gives an opportunity of arranging for funds necessary to satisfy the judgment. That these are the reasons on which the policy of the foregoing statutes was founded, is well supported by the authorities. First Nat. Bank of Birmingham v. Garrison, 235 Ala. 687, 692, 180 So. 690, 694; Scribner v. Whitcher, 6 N.H. 63, 23 Am.Dec. 708; Washington Nat. Bank v.

Williams, 188 Mass. 103, 74 N.E. 470; 23 C.J. p. 374; 38 C.J.S. Executions § 66. See also Ex parte Moore, 231 Ala. 209, 164 So. 210." Bailey Realty & Loan Co. v. Bunting, 246 Ala. 152, 153, 19 So.2d 609.

This court has said:

"The right to execution for the collection of moneyed judgments, when time for execution arrives, and no lawful supersedeas has intervened, is of equal moment in the administration of justice, as is the rendition of the judgment or decree." Ex parte Moore, 231 Ala. 209, 210, 164 So. 210.

In Moore v. Esslinger, 232 Ala. 251, 167 So. 328, this court considered a cause wherein the trial court had rendered a decree with judgment for money against an administrator of an estate on final settlement. In the decree, the trial judge had ordered that execution on the judgment be stayed until further orders. This court eliminated the stay provision from the decree, saying among other things:

"That part of the decree of July 6, 1935, in favor of the appellants reads as follows: '* * * and that Ida Moore and Camilla Roland have and recover of said Francis Esslinger, individually and as administrator of the estate of Nelson Sowell, deceased, and of said Maryland Casualty Company, the remainder of said sum of $4860.34 after deducting said sums above mentioned; and that this cause be retained on the docket of this court for further orders, and that no execution issue on this judgment or decree against said Esslinger or the surety on his bond until further orders; and that the parties in favor of whom this decree is rendered have such process by garnishment or otherwise as may enable them to collect from the Tennessee Valley Bank or its Liquidating Agent the amount remaining due on said deposits.'

". . .

"The decree against Esslinger individually (Evans et al. v. Evans et al., 200 Ala. 329, 76 So. 95) and as administrator is affirmed in all respects, except that it is corrected as to the stay of execution, under the showing made on the motion and the affidavit of W. L. Howard. This action of the trial court, under the evidence, was beyond the provisions of the statute (section 7795, Code) and the general powers of a court of equity.

". . .

"In respect to the provision in the decree for stay of execution, we may say, that each case must stand on its own facts—the sufficient cause that is shown. The right of a court of equity and the power conferred by statute (section 7795, Code) should not unduly prejudice a judgment creditor or distributee against his right or interest in the premises. The right to execution in the collection of a money judgment, when the time of the issue thereof accrues and there is no lawful supersedeas, is of equal moment in administration, as is the rendition of the judgment or decree. Ex parte Moore et al., 231 Ala. 209, 164 So. 210.

". . . The appellants not only appeal, but accompany the same with petition for mandamus to compel the issue of execution. And in a proper case, if the judge refuses to issue a proper order for execution, a mandamus will lie to compel action. Ex parte Moore et al., supra; Ex parte Sibert, 67 Ala. 349; Norwood v. Clem, 143 Ala. 556, 39 So. 214, 5 Ann.Cas. 625. The decree was held open to consider the progress of administration of the estate of the suspended bank. Pertinent facts as to its affairs are presented on motion aided by the affidavit of Howard, the agent in charge. The failure of the trial court to give aid in behalf of appellants-petitioners was error. The decree is corrected by the elimination of the provision for a stay of execution, and, as corrected, is affirmed.

**626**

The appeal and petition for mandamus being submitted together, the mandamus will issue to the judge of the circuit court, if necessary, to compel the issue of execution as prayed." (232 Ala. at 252, 253, and 254, 167 So. 329, 330, 331)

It appears that the administrator had deposited funds belonging to the estate in the Tennessee Valley Bank which had closed its doors on March 5, 1933, had never reopened, and was in the hands of the superintendent of banks for liquidation. It may be inferred that the purpose of the stay was to save the administrator and his surety from the hardship of paying the judgment pending payments to depositors by the liquidator of the bank. This court appears to have held that such purpose was not a lawful ground to authorize the stay of execution.

In Lockhart v. McElroy, 4 Ala. 572, this court considered a petition that a judgment be superseded. The ground for supersedeas was that subsequent to issue of execution the judgment, except for ten per cent penalty, had been paid. This court said:

"The substance of the facts stated in the petition for a supersedeas in this case is, that an execution for the same debt was in the hands both of the sheriff and coroner—that the sheriff made the money on the execution in his hands, but failed to pay it over—that a motion was made against the coroner for failing to make the money on the execution in his hands, and that, on motion, a judgment was rendered against him for the amount of the execution and ten per cent. damages thereon—that subsequently the sheriff paid the debt, yet the judgment against the coroner is attempted to be enforced by execution against him, not only for the damages but also for the amount of the judgment, although discharged by the sheriff.

"As the payment by the sheriff was a discharge of the judgment, it was in equity a satisfaction of the judgment against the coroner, which was founded on it, except for the ten per cent. damages, and the attempt to enforce the execution against the coroner, and thus obtain a double satisfaction was clearly unjust, and an abuse of the process of the Court. It was therefore the duty of the Judge, on these facts being properly presented, to grant a supersedeas to so much of the execution as was issued for the amount of the judgment discharged by the sheriff, leaving it in force for the damages of ten per cent., to which the plaintiff was entitled by his judgment." (4 Ala. at 574, 575)

In Gravett v. Malone, 54 Ala. 19, this court held that a judgment quashing execution was erroneous and reversed. With respect to the grounds on which execution may be superseded, this court said:

". . . That which forms the ground of relief on *supersedeas,* must either rest on facts occurring subsequent to the decree, such as satisfaction; or, if it *relates to antecedent facts, must show* fraud in the decree, or want of jurisdiction in the court, apparent on the face of the record; or a denial of the relation which authorizes execution. (Citations Omitted)" (54 Ala. at 21)

To like effect, see Merrill v. Travis, 248 Ala. 42, 26 So.2d 258, and authorities there cited.

The only ground on which the stay can be based in the instant case, so far as appears in the record, are the statements in the decree that financial hardship would accrue to respondent if he be required to pay in cash and the statement that complainant has paid the partnership debts in installments. We have not found in the record any averments that respondent would suffer financial hardship if required to pay in cash nor any prayer that execution be stayed.

It may be conceded that almost all judgment debtors experience hardship in paying judgments in the amount of $41,857.19.

Undoubtedly, the judgment debtor in Moore v. Esslinger, supra, experienced financial hardship in paying the judgment of $4,860.34 in the years 1933 to 1936 when the entire United States suffered the financial hardship of the depression. Most natural persons undergo financial hardship in paying substantial judgments which are recovered against them.

Consider the position of the complainant in the instant case. The partnership debt as shown by the record was $90,885.72; and complainant has paid all of it, not merely that part which he himself owed but also that part owed by respondent. Is the hardship sustained by complainant of less consequence than the hardship sustained by respondent? The court has determined that respondent is indebted to complainant for respondent's share of the debt and that the debt is due.

The statute requires that execution issue. There is no insistence that the judgment has been satisfied, no allegation of fraud in procurement of the decree or otherwise, no allegation of lack of jurisdiction in the court, no undecided issue which requires that the judgment be stayed until such issue may be litigated. We do not find in the record any valid ground why execution of the judgment should be denied or delayed beyond the time fixed by law.

█ We are of opinion that the court erred in staying execution as ordered in the decree. The decree is corrected by elimination of the words, "except as limited hereafter," from paragraph d of the decree, and by elimination of the entire paragraph e of the decree.

Affirmed on the appeal.

HEFLIN, C. J., and MERRILL, HARWOOD, BLOODWORTH, MADDOX, McCALL and JONES, JJ., concur.

FAULKNER, J., dissents.

Reversed and rendered on the cross appeal.

HEFLIN, C. J., and MERRILL, HARWOOD, BLOODWORTH, MADDOX and McCALL, JJ., concur.

FAULKNER and JONES, JJ., dissent.

FAULKNER, Justice (dissenting).

I must respectfully dissent.

Section 701 of the Internal Revenue Code of 1954 provides that a partnership as such shall not be subject to income tax. Persons carrying on a business as partners shall be liable for income tax only in their separate or individual capacities. However, while partnerships are not subject to income taxes they are nevertheless required to render an annual return on Form 1065, Internal Revenue Service. This is in the nature of an information return. The return must be signed by one of the partners and must include the gross income and deductions allowed the partnership, and also the names and addresses of the individual partners. Furthermore, partnership remuneration is not wages subject to income tax withholding. Revenue Ruling 69-184, 1969-1, p. 256.

From the facts in this case it appears that no partnership returns were ever filed; that Waters was paid a salary. He filed withholding tax forms. There was withheld income and social security taxes from his salary. And, his salary was a deduction on Schedule C (Income from Business and Profession) of Cochran's individual 1040 return. When a deduction taken on Cochran's individual return for business losses is added to the above facts, the result appears to be that Cochran did not consider himself a partner of Waters.

I further find from the facts that Cochran acted on the advice of a C.P.A. on his tax matters. There may be exceptions, but generally a C.P.A. is presumed to know which tax returns must be filed for his client. It is therefore logical to assume that if a valid partnership existed between Cochran and Waters, he would have filed the proper returns for the partnership. And, it can be further assumed that no C.P.A. would have reported gross income or

**628**

loss from a partnership on Schedule C of an individual return, Form 1040.

There do not appear to be any books of original entry setting up the alleged partnership; no balance sheets; no profit and loss statements for the years of the partnership. There doesn't appear any statement or entry showing what the net worth —beginning and ending—of each partner was. These are gross omissions of evidence to hold that a valid partnership existed.

I assume that under the majority opinion as to both parties, any sum paid by Waters to Cochran should be a deduction for state and federal tax purposes to him, and should be ordinary income to Cochran.

I would hold that no valid partnership ever existed and therefore pretermit discussion of the other issues of this case.

JONES, Justice (dissenting as to the cross appeal).

I would affirm as to the direct appeal and the cross appeal. I concur with the majority opinion on the issues presented on direct appeal since I believe that there was sufficient evidence from which the trial court could find the existence of a partnership. I must respectfully dissent, however, with respect to the cross appeal since I am also of the opinion that there was sufficient evidence justifying the trial court's holding allowing credit to the respondent in the amount of $3,585.67. It seems to me that the equitable principle of unjust enrichment would suffice to sustain the trial court's finding and order in this respect.

ON REHEARING.

Application for rehearing denied.

Decree corrected.

Opinion modified.

HEFLIN, C. J., and MERRILL, HARWOOD, BLOODWORTH, MADDOX and McCALL, JJ., concur.